FERDINAND P. VAN DER VEER, Appellant, *v*. WILLIAM THEILE, Respondent.

First Department, November 22, 1918.

**Contract — bills and notes — instrument not constituting promissory note — agreement constituting hiring from month to month and not for a year.**

A partnership in a foreign State by its junior member, the plaintiff, engaged the defendant to represent it in this State and make investigations as to the truth of statements made by residents of the foreign State to tax assessors as to stocks, bonds and other personal property. The firm

agreed to pay the defendant a monthly salary together with expenses and also to provide for the purchase and sale of such shares of stock as the defendant's investigations might require so as to enable him to obtain access to stock books and thereby discover whether residents of the foreign State were stockholders. After several shares of stock had been purchased for this purpose the plaintiff, contemplating a dissolution of his firm, asked the defendant to send him "a complete statement of *our* stock account," and the plaintiff and defendant executed an instrument in which the latter acknowledged the receipt of a sum of money and his liability to account to the plaintiff therefor. After the dissolution of the firm, defendant continued in the employ of the plaintiff until his discharge, when, in compliance with a demand by the plaintiff for the sum named in the agreement between them, he tendered the various stocks held by him at the prices which he paid therefor, contending that while the title of them was in him the actual ownership of the stocks was in the plaintiff. The latter thereupon brought this action upon the written instrument contending that it was in effect a promissory note for the payment of the sum named.

*Held,* that the facts and circumstances under which the money was advanced by the plaintiff to the defendant negatived any intention on the part of either party that the sum was to be repaid to the plaintiff and that the verdict of the jury in this respect is amply supported.

The letter of employment which specifically stated that defendant was to be employed at a monthly salary payable at the end of each month and that the employment was to be indefinite and subject to termination by either party at will, together with a further provision that unless unforeseen circumstances rendered it impossible the employers agreed and guaranteed to employ defendant for at least one year, did not constitute a hiring for a year.

The fact that at the time of defendant's discharge he had received payment for a month beyond the expiration of two years was not sufficient to render plaintiff liable to pay him for the remaining eleven months for which he claims.

The plaintiff was entitled, however, to a counterclaim for expenses and also for salary for the month prior to his discharge.

APPEAL by the plaintiff, Ferdinand P. Van Der Veer, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of February, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of March, 1918, denying plaintiff's motion for a new trial made upon the minutes.

*Guernsey Price,* for the appellant.

*Walter E. Godfrey,* for the respondent.

MERRELL, J.:

This action is brought by the plaintiff, appellant, Ferdinand P. Van Der Veer, to recover of the defendant, respondent, William Theile, upon an instrument in writing which plaintiff contends is in effect a promissory note for the payment of $3,000. The plaintiff resides at Indianapolis, Ind., and the defendant in the city of New York.

Plaintiff was the junior member of the firm of Glenn & Van Der Veer, who were engaged as tax accountants, nick-named " tax ferrets," and whose business consisted of investigations as to the truth of statements made by residents of the State of Indiana to tax assessors as to personal property owned by such residents. Under the law and practice in Indiana the tax assessor gives a taxable person a blank assessment list, and the latter is required to enter thereon different stocks and bonds and other items of personal property which he may own and which are subject to taxation. The assessor, under the practice in vogue, then enters into a contract with a tax accountant or " tax ferret " to investigate as to the truth of such statement. For the purpose of obtaining information the tax ferrets enter into arrangements with persons in different localities to investigate for them as to stock holdings in their localities.

On July 31, 1915, the firm of Glenn & Van Der Veer, by the plaintiff as junior member of said firm, with a view of engaging the services of the defendant as said firm's eastern or New York representative, wrote the defendant concerning such employment and making certain propositions to him with reference thereto. In short, the proposal was that the defendant should act as the firm's representative in obtaining such information as they might request and direct from time to time in special matters, defendant to send the firm information as to stock discovered by him to be owned by residents of the State of Indiana. For his services defendant was to receive $100 per month, payable at the end of each month, together with railroad fare and hotel expenses incurred by defendant while necessarily absent from New York city at request of plaintiff on plaintiff's work. The firm also agreed to provide for the purchase and sale of such shares of stock as the defendant's investigations and work might require, and

inclosed in their letter offering to employ defendant, a check for $500 to be deposited by defendant and used as a fund to buy shares of stock in various corporations, the possession of which enabled him to obtain access to the stock books of the corporations and discover as to whether residents of the State of Indiana were stockholders in such corporations. The plan was to buy a single share of stock in a corporation and after an investigation of the books of such corporation was completed, the share might be sold and the money derived therefrom returned to the fund to be used in the purchase of other shares of stock in other corporations. It was also stated in the written proposal that the period of defendant's employment was to be indefinite, and that the contract might be terminated by either party whenever such party might desire. It was also stated that in case his work was satisfactory and no obstacles were met in the prosecution thereof, the firm intended to employ defendant for many years as its representative. Subsequently, defendant objecting to the indefinite period of employment as above indicated, the plaintiff, at defendant's request, added to the clause with reference to the period of such employment the following: " And unless unforeseen circumstances render it impossible, we agree and guarantee to employ you for at least one year from date."

It is contended on the part of the defendant that this proposition was, in effect, a hiring by the year. Soon after the receipt of this letter, defendant replied, accepting the proposition of Glenn & Van Der Veer and entered upon the discharge of his duties. Early in August he was paid $100 for his services for the month of August, and thereafter was paid each month the sum of $100 for his services, and some additional moneys by way of remuneration for expenses incurred while out of the city of New York. This arrangement seems to have continued from month to month until the dissolution of the firm of Glenn & Van Der Veer, which occurred early in May, 1917.

The defendant testifies that in March, 1917, he had a personal interview with the plaintiff wherein the plaintiff informed him that personal difficulties had arisen between his partner, Glenn, and himself, which in all probability would result in the dissolution of the copartnership, and that undoubtedly he,

the plaintiff, would buy out his partner and continue in the same line of business in plaintiff's own name. Defendant testifies that on this occasion there was some talk as to the condition of the stock account between the firm and the defendant, and that plaintiff said to defendant that he did not wish, in reaching an adjustment of the copartnership affairs, that his partner, Glenn, should obtain possession of any of the shares of stock which had been obtained with considerable difficulty and which enabled defendant to prosecute his investigations successfully, and that in the dissolution he preferred to have the dealings between their firm and defendant considered on a cash basis, and asked defendant to prepare an account as to how they stood financially with reference to such stock dealing, and intimated that in due course of time defendant would receive a letter from plaintiff advising him of the dissolution of the copartnership and calling upon him for such statement. Accordingly, on April 26, 1917, Van Der Veer wrote Theile that a serious personal difficulty had arisen between himself and his partner, Glenn, and that their partnership relations had been severed, and that it then seemed certain that Mr. Glenn would step out of the business and leave him, Van Der Veer, in full possession, for a consideration which had not then been determined upon. Van Der Veer stated that he desired to continue the services of the defendant, and that the latter might look to him in the future, as he had in the past, for payments as well as direction and instruction along the lines of things he might do in conducting his investigations. The letter also contained certain directions as to carrying on such investigations and with reference to the purchase and sale of certain stocks necessary for such purpose. In the letter he also asked defendant to make up and send him " a complete statement of *our* stock account, up to date, in order that I may have same to use in making a settlement with Mr. Glenn on his interest therein," and requested that in case Glenn should write asking that any part of the stock fund be sent to him personally, to do nothing in the matter without first advising with the writer.

The instrument upon which plaintiff seeks to recover of the defendant herein appears to have been made between the plaintiff and the defendant in furtherance of such desire on

plaintiff's part. While the instrument acknowledges the receipt of the $3,000, and acknowledges defendant's liability to account to plaintiff for said sum, it nevertheless appears to have been executed for the purpose of effecting a settlement between the copartners, Glenn and Van Der Veer. It was the evident intention of the parties that its office was to facilitate such settlement upon a cash basis, to the end that Van Der Veer might retain control of the shares of stock purchased by the defendant and held by him for said firm.

The defendant insists, and the evidence would seem to support his contention, that at all times the various stocks, although in his name, were, in fact, owned by the copartnership, and that the defendant really had no personal interest therein, except to hold the same in his name to facilitate the investigations which he was making and to enable him to obtain access to the books of the various corporations issuing such stock.

After the dissolution of the copartnership, defendant continued in the employ of Van Der Veer, who carried on the same line of business as that theretofore conducted by Glenn & Van Der Veer. Van Der Veer paid defendant for his services $100 monthly. This new arrangement continued until October 4, 1917, when defendant was discharged by Van Der Veer under the claim that defendant had not been faithful to the plaintiff in the performance of his duties. Plaintiff then served notice under the provisions of the instrument upon which he is now claiming, demanding payment of the $3,000 covered thereby. Defendant refused to pay the same, but tendered to Van Der Veer the various stocks held by him at the prices which he paid therefor, defendant contending that, while the title was in him, the actual ownership of the stock was in the plaintiff. Plaintiff refused to receive the stocks, and insisted upon the payment of the money mentioned in the receipt, and brought this action to recover the same.

The learned court, upon the trial, submitted to the jury the question as to the real office of the instrument upon which plaintiff seeks to recover. The jury was advised that if they should find upon the evidence that the paper in question was signed by the defendant in reality for plaintiff's benefit, and that the $3,000 mentioned therein was for the purchase

of stock which was to be owned and controlled at all times by the plaintiff, although title was to stand in defendant's name, and that it was not the intent of the parties that the defendant should be answerable to the plaintiff for the fund used in the purchase of such stock, then the plaintiff could not recover; that if the instrument was drawn for the purpose of deceiving plaintiff's partner, and did not express the true relations of the parties with reference to such stock transactions, there could be no recovery by the plaintiff; and that, although the defendant might be the nominal owner of the stock, if the jury should find, as a matter of fact, that the plaintiff was the real owner, under such circumstances there could be no recovery.

The court further instructed the jury that if they believed there was no subterfuge, and that the money was actually loaned by the plaintiff to the defendant, and that the stock purchased thereby was to be defendant's own stock in carrying out his part of the agreement, then they might find a verdict for the plaintiff in the sum of $3,000 and interest.

The charge seems to have been entirely fair to the parties, and by their verdict the jury found with the defendant.

We think the facts and circumstances under which this money was advanced by the plaintiff to the defendant negatived any intention on the part of either party that the same was to be repaid to the plaintiff, as claimed by him in this action, and that the verdict of the jury in this respect is amply supported by the evidence.

By way of counterclaim the defendant alleged an indebtedness to him in the sum of $1,100 for salary for the balance of the year in which he was discharged, under the claim that the hiring was by the year, and also of the sum of $100 for expenses claimed to have been incurred by him in the month of September on a trip to the city of Chicago in plaintiff's interest. The jury, by their verdict, found for the defendant on his counterclaim for the full amount thereof, $1,200.

While the verdict of the jury absolving the defendant from liability on the instrument upon which plaintiff seeks to recover herein was entirely justified under the evidence, we are unable to find any sufficient evidence to support the verdict of the jury upon defendant's counterclaim, save for

First Department, November, 1918.        [Vol. 185.

salary for the month of September, 1917, prior to defendant's discharge, and for which he was not paid, and as to the item for $100 expenses incurred. The evidence clearly shows that the hiring was not by the year. The letter of employment which formed the contract between the parties specifically stated that defendant was to be employed as representative of plaintiff's firm at a salary of $100 a month, the same to be paid to defendant at the end of each month, and that the employment was to be indefinite and subject to termination by either party at will. The added provision that, unless unforeseen circumstances rendered it impossible, the employers agreed and guaranteed to employ defendant for at least one year from the date of the letter of proposal, or until July 31, 1916, in no manner changes the term of employment, except that it served as a guaranty that the monthly employment should continue for at least one year. All payments were made monthly. The fact that at the time of defendant's discharge he had received payment for a month beyond the expiration of two years was not, under the circumstances, sufficient to render plaintiff liable to pay him for the remaining eleven months for which he claims. We find no evidence in support of defendant's contention that the hiring was a yearly one, or that plaintiff's continuing defendant in his employ during the months of August and September, 1917, operated to extend his employment for another year. The verdict of the jury in defendant's favor and against the plaintiff upon defendant's counterclaim for $1,100 unpaid salary is entirely unsupported by the evidence, except to the extent of $100 unpaid salary for the month of September, 1917.

Except for the item of $100 included in defendant's counterclaim for expenses on a trip to Chicago, in September, 1917, and the further sum of $100 salary for said month, prior to defendant's discharge, the motion of plaintiff's counsel for the dismissal of defendant's affirmative cause of action upon the counterclaim, made at the close of defendant's case, should have been granted. In support of the item of $100 for expenses to Chicago, the defendant gave sufficient evidence to justify the jury rendering a verdict in defendant's favor for $100, and to that extent, together with $100 salary for September, the verdict may be sustained.

The judgment appealed from should be modified so as to provide for the dismissal of the plaintiff's complaint, and if defendant will stipulate to reduce the verdict rendered to $200, judgment may be modified accordingly, without costs. If defendant refuses to so stipulate, the judgment in defendant's favor is reversed and a new trial ordered, with costs to the appellant to abide event.

CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Judgment modified so as to provide for dismissal of complaint if defendant will stipulate to reduce verdict to $200, in which event judgment as so modified affirmed, without costs; otherwise, judgment in defendant's favor reversed and new trial ordered, with costs to appellant to abide the event. Order to be settled on notice.